IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEFANO KINIROPOULOS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NORTHAMPTON COUNTY | : | NO. 11-6593 |
| CHILD WELFARE SERVICE, | : | |
| Defendant. | : | |

**M E M O R A N D U M**

STENGEL, J.                                            January 10, 2013

This motion filed by Defendant, Northampton County Child Welfare Service,

seeks to dismiss Plaintiff's Amended Complaint.  Plaintiff claims discrimination in the

termination of his employment.  For the reasons set forth below, I will grant in part and

deny in part Defendant's motion to dismiss.

I.      **Background**

Plaintiff's Amended Complaint states that he was born in Greece. (Amend.

Compl. ¶ 22).  Plaintiff was employed by the Defendant as a Caseworker from October of

2005 until his termination in October of 2010.  (Amend. Compl. ¶ 3, 20).  His

employment was governed by a Collective Bargaining Agreement (CBA). (Amend.

Compl. ¶ 61).  Throughout his employment with the Defendant, Mr. Kiniropoulos

received performance evaluation reviews that were satisfactory or commendable.

(Amend. Compl. ¶ 5).  Plaintiff's immediate supervisor was Ms. Schienholz

("Schienholz").

On May 24, 2010, Plaintiff told his supervisor that he sustained a significant injury

to his leg, which would require him to walk with a cane.[1] (Amend. Compl. ¶¶ 7-8, 30).

As a result of his injury, Plaintiff was ordered by his doctor to limit any activity with the

injured leg.[2] (Amend. Compl. ¶ 9).  The next day he informed the supervisor that he had

difficulty walking and could not perform his three (3) scheduled court hearings on May

26, 2010. (Amend. Compl. ¶ 11).  The County offered to provide transportation to the

scheduled hearings.[3] (Amend. Compl. ¶ 12).  After that date, however, Plaintiff e-mailed

Defendant on June 2, 2010, regarding his medical condition and his inability to work.[4]

(Amend. Compl. ¶ 13).  Defendant never responded to the e-mail. (Amend. Compl. ¶ 14).

On June 10, 2012, Plaintiff contacted Gary Ruschman ("Ruschman"), the

Defendant's Director, regarding Plaintiff's medical health and his need for medical leave

under the FMLA.[5] (Amend. Compl. ¶ 15).  The following day, June 22, 2010, Ruschman

informed Plaintiff that there was an issue with the Plaintiff work documentation, notably

several alleged infractions and alleged misconduct regarding the Plaintiff's cases.

(Amend. Compl. ¶¶ 16-17).  Plaintiff was suspended on June 14, 2010, without pay and

told to contact his Union Representative with any questions. (Amend. Compl. ¶¶ 18-19).

Plaintiff was terminated on October 20, 2010. (Amend. Compl. ¶ 20).  On

---

[1] Plaintiff also states that he suffers from Chronic Obstructive Pulmonary Disease and Emphysema, (Amend. Compl. ¶ 30), however, other than this allegation in the Amended Complaint, Plaintiff makes no other reference to this condition.

[2] In his Amended Complaint Plaintiff alleges "he was having difficulty walking" (Amend. Compl. at ¶ 11), and that he was unable to "to work because of the injury he sustained to his leg."  (Amend. Compl. at ¶ 13).

[3] In Plaintiff's brief he states that he managed to attend those hearings per his supervisor's request. (Doc. No. 15 at 11).

[4] Plaintiff alleges in his Amended Complaint that his request for an accommodation to take a leave of absence would not have caused the Defendant any significant hardship.  (Amend. Compl. ¶ 35).

[5] Plaintiff also alleges that his spouse suffered from a serious health condition, as defined by the applicable FMLA regulations (Amend. Compl. ¶ 53), but does not indicate whether the Defendant was aware of this fact.

November 23, 2010, Plaintiff filed Charges of Discrimination with the EEOC and PHRC and was issued a right to sue letter. (Amend. Compl. ¶ 26).  Plaintiff alleges that Defendant regarded him as being disabled and violated the ADA and PHRA based on Defendant's believe that Plaintiff suffered from a disability.  (Amend. Compl. ¶ 39).  Plaintiff also alleges that Defendant discriminated against Plaintiff on the basis of his national origin and treated him differently from those employees born in the United States. (Amend. Compl. ¶ 39).  Plaintiff also alleges that Defendant took an adverse employment action against him for requesting Family Medical Leave Act ("FMLA") leave and interfered with his right to take FMLA leave.  Finally, Plaintiff argues that his termination violated procedural due process because he was not provided proper representation or a hearing.

## II.    Procedural History

Plaintiff initiated this action by filing a six-count Complaint, against Northampton County Child Welfare Service on October 21, 2011.  Following Defendant's first motion to dismiss (Doc. No. 7), Plaintiff filed an Amended Complaint on April 11, 2012.  (Doc. No. 9).  The Amended Complaint alleges the Defendant unlawfully terminated his employment in violation of the following laws: Count I:  Violation of the Americans with Disabilities Act (ADA), 4 U.S.C. § 12101, et seq.; Count II: Violation of the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951, et seq.; Count III: Violation of Federal Civil Rights Act, 42 U.S.C. § 2000e et seq.; Count IV: Violation of the Family Medical Leave Act (FMLA) – Retaliation, 29 U.S.C. § 2615; Count V: Violations of Procedural Due Process, 42 U.S.C. § 1983.  On April 30, 2012, Defendant filed a Motion

to Dismiss in response to Plaintiff's Amended Complaint.  (Doc. No. 13). Plaintiff then

filed a motion in opposition on May 29, 2012 (Doc. No. 15), and Defendant filed a reply

on June 12, 2012.  (Doc. No. 16).

### III.    Standard of Review

A motion to dismiss under Rule 12(b)(6) examines the legal sufficiency of the

complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The factual allegations must

be sufficient to make the claim for relief more than just speculative.  Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 555 (2007).  Pursuant to Ashcroft v. Iqbal, 556 U.S. 662

(2009), my inquiry is two-fold: "First, the factual and legal elements of a claim should be

separated. [I] must accept all of the complaint's well-pleaded facts as true, but may

disregard any legal conclusions. Second, [I] must then determine whether the facts

alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for

relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal,

556 U.S. at 679).[6]

In deciding a motion to dismiss, courts generally consider only the allegations

contained in the complaint, any exhibits attached to the complaint, and matters of public

record.  Pension Benefit Guaranty Corp. v. White, 998 F.2d 1192, 1196 (3d Cir.1993).

However, "a court may consider a document that is 'integral to or explicitly relied upon

in the complaint' without converting the motion to dismiss into one for summary

---

[6] Although "extraneous to the pleadings," the exhibits attached to Defendant's Motion to Dismiss may properly be considered under Rule 12(b)(6) "'without converting the motion into one for summary judgment'" because they are "'integral to or explicitly relied upon in [Plaintiff's] complaint.'"  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)).

judgment." In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d

Cir.1997).  For instance, a court may consider a document attached to a motion to

dismiss, provided that its authenticity is undisputed and that plaintiff's claims are based

on the document.  Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 781 (W.D. Pa. 2000)

(citing Pension Benefit, 998 F.2d at 1196).

## IV.    Discussion

## A.    ADA and PHRA (Counts I and II)[7]

The ADA[8] makes it unlawful for an employer to "discriminate against a qualified

individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other

terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To

discriminate "on the basis of disability" includes "not making reasonable

accommodations to the known physical or mental limitations of an otherwise qualified

individual with a disability."  42 U.S.C. § 12112(b)(5)(A).  Consistent with the duty to

reasonably accommodate, an employer must "engage the employee in the interactive

process of finding accommodations."  Taylor v. Phoenixville Sch. Dist., 184 F.3d 296,

319 (3d Cir. 1999); see also Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 329 (3d

Cir. 2003).

---

[7] As the Third Circuit has held: "[T]he PHRA is to be interpreted as identical to the federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently."  Slagle v. County of Clarion, 435 F.3d 262, 265 n.5 (3d Cir. 2006) (citing Fasold v. Justice, 409 F.3d 178, 184 n.8 (3d Cir. 2005)). Therefore, my analysis of Plaintiff's ADA claim applies equally to his PHRA claim.  Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996); see also Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999).

[8] The ADA Amendments Act of 2008 (ADAAA), which broadened the definition of disability, took effect on January 1, 2009; it applies to this case because Defendant terminated Plaintiff's employment on October 20, 2010.

To make out a prima facie case of disability discrimination, a plaintiff employee must show "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination."[9] Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998).

Plaintiff alleges Defendant violated the ADA by terminating him based on the perception that Plaintiff suffered from a disability.  Defendant counters that Plaintiff cannot prevail on any of these theories because he has not plausibly alleged that he is "disabled," that he is a "qualified individual," that Defendant failed to provide a reasonable accommodation, or that he ever requested an accommodation covered under the ADA.

Plaintiff does not contend he is actually disabled under § 12102(2)(A); rather, he alleges he was "regarded as" having a disability under § 12102(2)(C).[10]  Defendant

---

[9] According to the EEOC, a person is "substantially limited" if the person is "(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j)(1).  In making this determination, courts should consider "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2); see also Taylor, 184 F.3d at 307 (applying the factors in 29 C.F.R. § 1630.2(j)).

[10] Plaintiff's argument appears confused in that he specifically alleges in his Amended Complaint that he is not disabled; however, later argues that he is a qualified individual with a disability.  See Amend Compl. at ¶ 39 ("The Plaintiff is not alleging that he was disabled; on the contrary Plaintiff is alleging that Defendant regarded him as being disabled."); contra Plaintiff's Motion in Opposition Doc. No. 15 at 10, 11, 14  ("in addition to being actually disabled, a plaintiff can show that he was "regarded as" being disabled by the employer"; "assuming arguendo, that Plaintiff will not be regarded as being "disabled," he was "regarded as" being disabled within the meaning of the ADA"; and "although Plaintiff's injury may not have allegedly lasted more than six (6) months, his injury can still qualify as a disability under the ADA.").  To the extent that Plaintiff argues the "regarded as" prong, the argument is clear that Plaintiff alleges Defendant employer regarded him as having a disability.

contends Plaintiff is not disabled under any section, including the "regarded as prong."[11]
I find that Plaintiff has not pled sufficient facts to show he was regarded as disabled
within the meaning of the ADA.  I will grant Defendant's motion as to Plaintiff's ADA
and PHRA claims.

     1.  <u>Disabled under the ADA</u>

     A person qualifies as "disabled" under the ADA, if he: (1) has a physical or mental
impairment that substantially limits one or more of his major life activities; (2) has a
record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C.
§ 12102(1).  With the passage of the ADA Amendments Act of 2008 ("ADAAA"),
Congress increased the non-exhaustive list of "major life activities" in an effort to
promote a less restrictive interpretation of "disability." Pub. L. No. 110-325, §§ 2(b)(1)-
(6), 3(2)(a), 122 Stat. 3553, 3555 (2008).  In doing so, Congress declared that "[t]he
definition of disability shall be construed in favor of broad coverage of individuals under
this Act, to the maximum extent permitted by the terms of this Act."[12] Pub. L. No. 110-
325, § 4(a), 122 Stat. at 3555.  Therefore, "substantially limits" is "not meant to be a
demanding standard."  29 C.F.R. § 1630.2(j)(1)(i) (2011).

     However, a temporary non-chronic impairment of short duration is not a disability
covered under the ADA. <u>Macfarlan v. Ivy Hill SNF, LLC</u>, 675 F.3d 266, 274 (3d Cir.
2012) (citing <u>Rinehimer v. Cemcolift, Inc.</u>, 292 F.3d 375, 380 (3d Cir. 2002)) (finding

---

[11] Defendant argues Plaintiff has failed to allege sufficient facts that he is disabled, has a record of a disability, or
was regarded as having a disability.  In his motion in opposition, Plaintiff argues only that he was disabled and was
regarded as having a disability.

[12] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing,
eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking,
communicating, and working." 42 U.S.C. § 12102(2)(A).

that the plaintiff's temporary lifting limitations, removed only four months after first

imposed, were "the very definition of such a non-chronic impairment," and thus not an

ADA-qualifying disability).

Plaintiff argues in his motion in opposition that he is disabled as it is defined in the

Amendments to the ADA.  Specifically, Plaintiff argues that:

> The ADAA made it clear that an impairment lasting or expected to last
> fewer than six months can be substantially limiting and qualify as a
> disability under the ADA. See 29 C.F.R. § 1630.2(j)(1)(ix) ("The effects of
> an impairment lasting or expected to last fewer than six months can be
> substantially limiting within the meaning of this section"). "Sleeping,
> walking, standing, sitting, reaching, lifting, bending, speaking, breathing,
> learning, reading, concentrating, thinking, communicating, interacting with
> others, and working" as well as "the operation of a major bodily function"
> are major life activities. See 29 C.F.R. § 1630.2(i).

(Doc. No. 15 at 14).  Defendant argues that Plaintiff admitted he was not disabled in the

Amended Complaint.  Additionally, Defendant states that Plaintiff's leg injury was a

"temporary, non-chronic impairment of a short duration with little to no long-term impact

[that] does not qualify as disability under the ADA." (Doc. No. 12-1 at 21).

The Plaintiff specifically stated he was not alleging an actual disability, but rather

that the Defendant regarded him as disabled.[13]  Plaintiff amended his Complaint

following Defendant's initial motion to dismiss, but did not include the allegation that

Plaintiff was disabled under the ADA or its Amendments.  Further, Plaintiff attempts to

clarify that he only argues under the regarded as prong.  The fact that Plaintiff argued that

he is disabled in his memorandum opposing the motion to dismiss is irrelevant.  Because

the Amended Complaint does not claim Plaintiff was disabled under the ADA, I will not

---

[13] "The Plaintiff is not alleging that he was disabled; on the contrary Plaintiff is alleging that Defendant regarded him as being disabled." (Amend. Compl. at ¶ 39).

consider the arguments addressed in Plaintiff's motion in opposition to Defendant's motion to dismiss, which address this issue.

a. "Regarded as" Having a Disability

As revised under the ADAA, a plaintiff bringing a "regarded-as" claim of disability discrimination under the ADA need only demonstrate that he was subjected to an adverse action "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Notably, where a plaintiff is merely regarded as disabled rather than suffering from an actual disability, the perceived impairment must *not* be transitory and minor. Id. § 12102(3)(B) (emphasis added). Transitory and minor impairments are defined as those with an expected duration of six months or less. 42 U.S.C. § 12102(3)(B). Furthermore, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996).

Plaintiff argues that Defendant misconstrues the amendments to the ADA statute and states that,

> [u]nder the clear language of the statute, an employee making a "regarded as" claim is not required to show that the disability he is perceived as suffering from is one that actually limits, or is perceived to limit, a major life activity. To the contrary, cognizable ADA injury occurs when an employer takes an adverse employment action against an employee because of its perception that the employee suffers from a recognized disability.

(Doc. No 15 at 9). Plaintiff argues that his injury was not minor because it substantially

limited a major life activity. Defendant argues that Plaintiff has not pled sufficient facts to show that Defendant regarded him as having a disability because merely alleging Defendant believed Plaintiff was eligible for FMLA leave, was aware that Plaintiff injured his leg, or offered an accommodation does not demonstrate that Defendant regarded the Plaintiff as disabled.  Further, Defendant argues that Plaintiff has failed to show that he suffered from an impairment with an actual or expected duration of six (6) months or longer as required under the statute.  Id.

I agree with Defendant that a plaintiff's potential inability to work for a short period of time while recovering from an injury or surgery does not constitute a "disability" under the ADA's "regarded as" analysis.  Although Plaintiff does not allege that his injury would last six or more months in duration, it is not apparent from the pleadings that it did not last six or more months.

Moreover, in Warshaw v. Concentra Health Servs., 719 F. Supp. 2d 484 (E.D. Pa. 2010), the court found that, "[a]s a general matter, a fact-finder could reasonably conclude that adverse actions suffered by an employee shortly after an employer learns of the disability are, in fact, based on the employer's belief that the employee is limited in a major life activity."  Warshaw, 719 F.Supp.2d at 496; Weaver v. County of McKean, 2012 U.S. Dist. LEXIS 61920 (W.D. Pa. Apr. 9, 2012) (finding that, Plaintiff sufficiently stated a prima facie case of "regarded as" disability discrimination because the immediacy of her placement on "administrative leave" after Defendant's discovery of her psychological conditions and medication regimen, and the ultimate termination of her employment less than a week later, supports an inference that Defendant regarded her as

disabled); <u>Bullock v. Balis & Co.</u>, 2000 U.S. Dist. LEXIS 18207, 2000 WL 1858719, at *5 (E.D. Pa. Dec. 19, 2000) (termination two weeks after disclosure of ADD condition sufficient to raise an inference of "regarded as" disability discrimination); <u>Stewart v. Bally Total Fitness</u>, 2000 U.S. Dist. LEXIS 10047, 2000 WL 1006936, at *5 (E.D. Pa. July 20, 2000) (temporal proximity of plaintiff's demotion, suspension and dismissal to onset of symptoms of bipolar disorder was sufficient to raise an inference of "regarded as" disability discrimination).

Drawing all inferences favorably to the Plaintiff, I will not dismiss the claim based on the issue of whether the injury was transitory and minor. Additionally, I find that the temporal proximity between Plaintiff's disclosure and his termination is sufficient to support an inference that Defendant regarded Plaintiff as disabled. However, even if Defendant did regard the Plaintiff as disabled, Plaintiff was not a qualified individual under the Act.

### 2. Otherwise Qualified Individual

Assuming, that Plaintiff was regarded as disabled, he was not an "otherwise qualified" individual because he was unable to perform the essential functions of his position. The Third Circuit has articulated a two-prong test for determining whether someone is a qualified individual under the ADA: (1) whether the individual satisfies the prerequisites for the position, by possessing the appropriate educational background, employment experience, skills and licenses; and (2) whether the individual can perform the essential functions of the position, with or without reasonable accommodation. <u>Gaul v. Lucent Techs., Inc.</u>, 134 F.3d 576, 580 (3d Cir. 1998); 42 U.S.C. § 12111(8). Plaintiff

bears the burden of proving that he is a qualified individual.  Shiring v. Runyon, 90 F.3d 827, 832 (3d Cir. 1996).

There is no evidence to suggest Plaintiff does not meet the first prong of the test, as he possesses education, skills, and experience for his current position.  In Plaintiff's motion in opposition, Plaintiff claims he was capable of performing the job because on May 26, 2010, he attended the hearings despite informing his supervisor he would be unable to work.  (Doc. No. 15 at 11).  However, in his Amended Complaint, Plaintiff claims he could not work.  (Amend. Compl. at ¶ 13).  He even goes so far as to suggest that the reasonable accommodation was to allow him not to work, as it would cause no substantial hardship to the Defendant.[14]  (Amend. Compl. ¶ 35).

Although Plaintiff argues that he attended the hearings on May 26, 2010, Plaintiff states that "[a]fter that date, … Plaintiff emailed the Defendant … [about] his inability to work."  (Doc. No. 15 at 11).  Shortly thereafter, Plaintiff requested he be put on leave due to his injury.  Additionally, even with the offer of transportation accommodations, Plaintiff told his supervisor that he was unable to work.  Therefore, he could not perform the essential functions of the job as he could not perform any job functions and he is not a qualified individual under the act.

3.  Reasonable Accommodation

An employer who does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability"

---

[14] "Employers are not required to accommodate an employee by removing an essential function or restructuring a job so as to avoid [implicating the disability]."  Skerski v. Time Warner Cable Co., 257 F.3d 273, 285 n.4 (3d Cir. 2001).

discriminates "on the basis of disability." 42 U.S.C. § 12112(b)(5)(A). However, the distinction between whether a Plaintiff is actually disabled or "regarded as" disabled is important because as part of the amendments to the ADA, claims based on a failure to accommodate can only be brought as part of an *actual* disability claim. "The ADAAA specifically provides that an employer is not required to accommodate employees who are merely regarded as disabled." Pearce-Mato v. Shinseki, 2012 U.S. Dist. LEXIS 80491, *19 (W.D. Pa. June 11, 2012); 42 U.S.C. § 12201(h). Therefore, Defendant was not required to offer an accommodation because Plaintiff has not alleged that he was actually disabled. Because Plaintiff had an opportunity to amend his Complaint based on the Defendant's initial motion to dismiss, which articulated these same arguments, I will grant Defendant's motion to dismiss Counts I and II of the Amended Complaint with prejudice.

**B.     Count III – Violation of Title VII – National Origin**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under the McDonnell Douglas scheme, plaintiffs alleging race or national origin based employment discrimination must first establish a prima facie case by showing: (1) they are members of a protected class; (2) they are qualified for the position; (3) they suffered an adverse employment action; and (4) that the action occurred under circumstances that give rise to an inference of unlawful discrimination, such as when a similarly-situated person not of the protected class is treated differently. See

Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

Defendant challenges the fourth element of the prima facie case. Specifically, it states that Plaintiff cannot demonstrate that his discipline and eventual termination occurred under circumstances which give rise to an inference of unlawful discrimination. Plaintiff argues that stating he was Greek and was treated differently because of his national origin is sufficient to state a claim of discrimination.  In his motion in opposition, Plaintiff argues that the time sheets, which were the basis for Plaintiff's termination, were not followed on a regular basis and that Plaintiff was not even responsible for his own log of activities.  (Doc. No. 15 at 19).  Plaintiff argues that these sign in/out sheets inconsistencies shows that Plaintiff was treated differently because he was Greek.

This argument is entirely off-base and draws no connection between Plaintiff's national origin and an inference of unlawful discrimination.  Plaintiff includes the discussion of time sheets for the first time in his motion in opposition to the Defendant's motion to dismiss.  However, even if these facts were included in the Amended Complaint, Plaintiff would still fail to establish the fourth element under the "plausibility" standard set forth in Twombly and Iqbal.

The Amended Complaint fails to allege any facts that suggest the Plaintiff was terminated because of his national origin.  See Guirguis v. Movers Specialty Servs., 346 Fed. Appx. 774 (3d Cir. 2009) (finding that plaintiff did not plead sufficient facts when the complaint merely stated that plaintiff was an Egyptian native of Arab descent, that

defendant discharged him, and that his termination occurred in violation of his civil rights.  Additionally there were no facts supporting an inference that defendant terminated plaintiff on the basis of his national origin or why plaintiff believed that national origin motivated defendant's actions).

In Truong v. Dart Container Corp., 2010 U.S. Dist. LEXIS 114286, 8-9 (E.D. Pa. Oct. 25, 2010), the plaintiffs alleged they were the discriminated against based on their national origin.  The facts in the complaint stated that plaintiffs began working for the defendant in 1993 and they were Asian females, born in Vietnam, and spoke little English.  Truong, 2010 U.S. Dist. LEXIS 114286, 7-9.  In February 2008, plaintiffs' employment was terminated allegedly for falsification of records with intent to deceive the company.  Id.  The plaintiffs also asserted that defendant

> discriminated against the plaintiffs and treated them differently, disparately, wrongfully suspended, and wrongfully discharged them because of their common native language, Vietnamese, their Asian race, color, ethnicity and Vietnamese nationality.  Defendant has a pattern and practice of disparate treatment and discrimination against nonwhite employees (because of their race, color, ethnicity, and/or nationality).

Id.  The court found that the plaintiffs failed to plead any facts that suggest that their terminations had anything whatsoever to do with their race or national origin because the allegations were wholly conclusory and did not allege any actual underlying factual matter.  Id. The court concluded that "[w]ithout some factual basis, the allegations simply restate the elements of a prima facie case of employment discrimination based on race and national origin, and are not entitled to the presumption of truth."

Similarly, Plaintiff's bare bones allegations cannot survive a 12(b)(6) motion.

Plaintiff merely alleges that he was born in Greece (Amend. Compl. at ¶ 22); he was qualified for the position he held with the Defendant (Amend. Compl. at ¶4); he was discriminated on the basis of national origin (Amend. Compl. at ¶¶ 21, 23); and the Defendant blatantly treated employees born in the United States more favorably. (Amend. Compl. at ¶¶48-49).  The Amended Complaint makes no indication of how Defendant treated United States citizens more favorably nor does it state any facts other than those conclusory allegations noted above.  Plaintiff also fails to set forth that the other employees were similarly situated or that they were in fact treated differently under similar circumstances.  See Distajo v. PNC Bank, N.A., 2009 U.S. Dist. LEXIS 100649, 9-12 (E.D. Pa. Oct. 27, 2009) (finding that plaintiff's complaint did not state a prima facie case of discrimination because the complaint drew no inference that plaintiff was fired based on his national origin); Omogbehin v. Dimensions Int'l, Inc., 2009 U.S. Dist. LEXIS 63222 (D.N.J. July 22, 2009) (finding that plaintiff's general claim that he was terminated for discriminatory reasons is too broad to put the opposing party on notice of his claims); Rene v. Lidestri Foods, Inc., 2010 U.S. Dist. LEXIS 122246, 2010 WL 4807050, at *6 (D.N.J. Nov. 17, 2010)("a prima case must support the inference that Plaintiff was discriminated against because of his race,  color, or national origin — it is not prima facie discrimination to simply be a member of a protected class who is subjected to a negative employment decision").[15]  Additionally, Plaintiff had occasion to

---

[15] In Fordham v. Agusta Westland N.V., 2007 U.S. Dist. LEXIS 2979 (E.D. Pa. Jan. 11, 2007), plaintiffs alleged that they were Americans, they were hired in the United States and sent abroad for training, and they suffered adverse actions such as denial of differential pay, paid lunch breaks, and adequate training, as well as mistreatment on account of their national origin.  Finally, plaintiffs alleged that their non-American counterparts were not subjected to those same adverse actions.  The court found these were sufficient facts to state a claim for discrimination on the

amend the allegations in his claim for discrimination under Title VII following

Defendant's first motion to dismiss, but failed to set forth any further facts.  Therefore, I

will dismiss Plaintiff's Title VII claim with prejudice.

## C.     Count IV: Violation of the FMLA – Unlawful Retaliation

The FMLA also "prohibit[s] an employer from retaliating against an employee

because the employee exercised her rights under the statutes or opposed any practice

made unlawful by them." <u>Reifer v. Colonial Intermediate Unit</u>, 462 F. Supp. 2d 621, 638-

39 (M.D. Pa. 2006).  Such claims are analyzed under the <u>McDonnell Douglas</u> test.[16] To

establish a prima facie case of retaliation in violation of the ADA or FMLA, the plaintiff

"must show that she engaged in an activity protected under any of the statutes; she

suffered an adverse employment decision; and, the adverse decision was causally related

to the exercise of her ADA or FMLA rights." <u>Id.</u> at 639; <u>Conoshenti v. Public Service</u>

<u>Electric & Gas Co.</u>, 364 F.3d 135, 146 (3d Cir.2004).

### 1.  <u>Eligible Employee</u>

---

basis of national origin, and denied defendants' motion to dismiss.

Additionally, in <u>Beaubrun v. Inter Cultural Family</u>, 2006 U.S. Dist. LEXIS 47973, 21-22 (E.D. Pa. July 13, 2006), the court found that the complaint was sufficient to support a claim of national origin discrimination because the plaintiff alleged that defendants recommended plaintiff be disciplined for certain actions, but did not recommend discipline for those same actions when committed by "similarly situated personnel who were not of Haitian origin." <u>Id.</u>  The complaint also stated that, unlike "personnel not of Haitian descent," Defendants did not provide Plaintiff with "any forewarning that her employment was in serious jeopardy." <u>Id.</u>

These cases are distinguishable from the facts in this case because the plaintiffs alleged that other similarly situated individuals who were of different national origin were treated differently and then went on to articulate some factual basis for the allegation.  Here Plaintiff merely states that all other United States citizens were treated more favorably than Plaintiff because Plaintiff was not born in the United States.

[16] Under that framework, a plaintiff must first establish a prima facie case of retaliation.  If the plaintiff succeeds in doing so, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." <u>McDonnell Douglas</u>, 411 U.S. at 802.  If the defendant carries its burden, the plaintiff must have the opportunity to prove that the reasons offered by the defendant were not its true reasons, but rather a pretext for discrimination. <u>Shaner v. Synthes (USA)</u>, 204 F.3d 494 (3d Cir. 2000).

Under the FMLA, "an eligible employee shall be entitled to a total of twelve (12) workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612(a)(1)(D).  Additionally, to be eligible for FMLA leave, an employee must have been employed for twelve (12) months and for at least 1,250 hours of service during the previous twelve-month period.[17]  29. U.S.C. ¶¶ 2611(2)(A)(ii), (2)(B)(ii).  The term "employer" is defined under the FMLA to mean "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A).

Defendant argues that Plaintiff has not set forth specific facts alleging that he was an eligible employee under the FMLA.  I find that Plaintiff has not validly pled that he was an "eligible employee" under the FMLA.[18] To begin with, the fact that Plaintiff worked for the Defendant since October 2005 and remained an active employee until his suspension in May 2010 satisfies the Court that he was plausibly employed for at least twelve months prior to asking for FMLA leave.  Plaintiff, however, has not satisfied the second requirement under § 2611(2)(A). The proposed Amended Complaint totally fails to allege that Plaintiff worked 1,250 hours in the period required under the statute.  See

---

[17] The pleadings are unclear as to whether Plaintiff was seeking FMLA leave because of the situation with his leg injury or his wife's illness.  Because there are insufficient facts to establish that Defendant had any knowledge of Plaintiff's wife's illness.  I will base my analysis solely on Plaintiff's request for FMLA leave as a result of his leg injury.

[18] The Court cannot take into consideration Plaintiff's contention in paragraph 52 of the Amended Complaint that Plaintiff, "at all times relevant hereto, was an eligible employee" under the Act because this statement is a legal conclusion. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

<u>Ingrassia v. Cnty. of Sullivan</u>, 262 F. Supp. 2d 116, 119-20 (S.D.N.Y. 2003) (requiring plaintiff to amend a complaint that alleged 1,250 hours worked in the previous calendar year, but did not allege 1,250 hours worked in the specific 12-month period at issue).

There is no mention of whether the Plaintiff was employed full-time, so it is not possible and certainly not plausible for the court to even assume Plaintiff worked the requisite hours. <u>See</u> <u>Fazio v. New Jersey Tpk. Auth.</u>, 2012 U.S. Dist. LEXIS 2804, *18 (D.N.J. Jan. 10, 2012) (discussing that "possible" is not the standard of <u>Iqbal</u> and holding that it could not engage in mere guesswork to determine the employee worked the required hours to be an eligible employee under the FMLA). Additionally, the Amended Complaint fails to state that Defendant employs at least 50 employees within a 75-mile radius of its work site, which is necessary to meet the third requirement being of an eligible employee.

In <u>Kaniuka v. Good Shepherd Home</u>, 2005 U.S. Dist. LEXIS 26963, 14-15 (E.D. Pa. Nov. 3, 2005), I found the Plaintiff had stated enough facts to show she was an eligible employee stating,

> The Amended Complaint alleges that defendant Good Shepherd employed Plaintiff for more than three years. Am. Compl. P19. Plaintiff, therefore, meets the first requirement of being of an eligible employee under the FMLA. Additionally, the Court infers from the fact that Plaintiff was continuously employed for more than three years, as well as the fact that none of the parties have suggested any interruptions to Plaintiff's employment, that she meets the second requirement of being an eligible employee under the FMLA. See id. Finally, the Amended Complaint states that defendant Good Shepherd employs at least 50 employees within a 75-mile radius of its work site, meeting the third requirement being of an eligible employee under the FMLA. Am. Compl. P15. Accordingly, the Amended Complaint has stated sufficient facts to qualify Plaintiff as an eligible employee under the FMLA.

However, the Plaintiff in <u>Kaniuka</u> pleaded more facts than we have in this case; there is no mention that the Defendant employs at least 50 employees within a 75-mile radius of its work site.  Further, Defendant, Northampton County Child Welfare Service, is not a large corporation where we could easily make an inference fulfilling employee requirement.  Plaintiff does not even address Defendant's argument concerning eligibility in his motion in opposition.  Although Plaintiff already amended his Complaint in response to the previous motion to dismiss, which raised these issues, I will dismiss this count without prejudice.

1. <u>FMLA Retaliation - Causation</u>

It is clear that the Plaintiff suffered an adverse employment action – his suspension and ultimate termination.  However, Defendant argues that Plaintiff cannot establish a causal relation between the exercise of his statutory rights and his termination.[19]  To the contrary, the Court finds that the extreme temporal proximity of Plaintiff's request for leave and his being placed on suspension without pay is sufficient to withstand Defendant's motion to dismiss.

Although Plaintiff was not terminated for a few months, at this stage in the case, I find his suspension without pay sufficient to withstand the motion to dismiss.  <u>See</u>, <u>Spring v. Sealed Air Corp.</u>, 2011 U.S. Dist. LEXIS 108331 (E.D. Pa. Sept. 21, 2011)(finding that the temporal proximity of Plaintiff's suspension to his use of FMLA leave was sufficient to meet his prima facie case on a motion for summary judgment).

---

[19] Unless the timing is "unusually suggestive" of a causal link, temporal proximity, standing alone, is insufficient to establish causation. <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 503-04 (3d Cir. 1997).

Defendant's argument that it has proffered a legitimate, nondiscriminatory reason for terminating the Plaintiff's employment – Plaintiff's alleged infractions and misconduct regarding his documentation intended to suspend Plaintiff based on his misconduct regardless of any FMLA request – fails because this other "legitimate business purpose" cannot absolve its conduct if it nonetheless interfered with Plaintiff's rights under the FMLA. Defendant had taken no action prior to Plaintiff's request for FMLA leave and Plaintiff was immediately placed on unpaid leave and then terminated only a few months thereafter.  Given the timing of the Plaintiff's request to take FMLA leave, and his suspension and subsequent termination, I find that the causation element withstands the motion to dismiss.

### Count V: Fourteenth Amendment Violation of Due Process Claim

The Fourteenth Amendment of the Constitution forbids a state from depriving persons of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.  A Plaintiff suing under 42 U.S.C. § 1983 for a state actor's failure to provide procedural due process must prove "the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property'"; and (2) the procedures available provided the plaintiff with "due process of law."  Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984).

A plaintiff must have taken advantage of the processes available to him or her, unless those processes are unavailable or patently inadequate.  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000); Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982) (finding that "a state cannot be held to have violated due process requirements when it has made

procedural protection available and the plaintiff has simply refused to avail himself of them.").  If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.  Suzuki, 227 F.3d at 116 (citing McDaniels v. Flick, 59 F.3d 446, 460 (3d Cir. 1995)).

Plaintiff argues that the Defendant violated the Fourteenth Amendment by failing to provide adequate procedural processes when depriving him of his asserted property interest in employment.  Plaintiff argues that he has a protected property interest pursuant to the CBA.[20]  Defendant argues that Plaintiff did not adequately plead a protected property interest because Plaintiff does not allege the rules under the Pennsylvania Civil Service Law which purportedly secure Plaintiff's employment or claims of entitlement to those benefits.[21]  Moreover, Defendant contends that even assuming Plaintiff had a protected property interest, the grievance and arbitration procedures under the CBA comport with due process because Plaintiff was afforded a pre-termination hearing (Compl. at ¶ 63) and had an opportunity to appeal his suspension prior to having his salary cut off (Compl at ¶ 70).

Following the standard for determining a motion to dismiss, it is plausible that

---

[20] Although a court is permitted to consider the relevant portions of the CBA, in motion to dismiss under Rule 12(b)(6), neither party has provided the document to the court. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1424-25 (3d Cir. 1997).

[21] "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).  Whether a person has  a property interest in his government job is a question answered by state law.  Id.  For example, in Pennsylvania, public employees are generally presumed to be employees at will, Scott v. Phila. Parking Auth., 402 Pa. 151 (Pa. 1960)), and a property interest exists under an employment contract only when termination is allowed "for cause." Sanguigni v. Pittsburgh Bd. of Pub. Ed., 968 F.2d 393, 401 (3d Cir. 1992).

Plaintiff has a protected property interest in his continued employment.  However, under the facts of this case, as set forth in the Amended Complaint, I conclude that Plaintiff has not pled sufficient facts to show that he has exhausted all available remedies under the CBA.  In order to plead successfully a cause of action under section 1983, a plaintiff must plead sufficient facts to establish the deprivation of some constitutional right, privilege, or immunity. 42 U.S.C. § 1983.

As the parties have not attached a copy of the CBA to which Plaintiff was a beneficiary, the grievance procedure applicable to Plaintiff, or the availability of one, can only be identified in Plaintiff's allegations that he was afforded a pre-termination hearing. (Compl. at ¶ 63).  Plaintiff claims that his rights were violated because he did not receive realistic or effective union representation.  Plaintiff does not, however, indicate whether he followed the CBA's grievance procedure requirements applicable to a grievant.  As a result, I find that Plaintiff's § 1983 claim must be dismissed without prejudice for lack of specificity.  Plaintiff may file a second amended complaint as to his §1983 claim, which should set forth specific factual allegations that, if proved at trial, would establish that a violation of Plaintiff's due process property rights under the CBA.  The claim should include an explanation of Plaintiff's conduct in the wake of his firing, including what steps, if any, he and/or his union took in challenging his suspension and dismissal through administrative or grievance procedures.  If the grievance procedures were properly processed, there would be no § 1983 violation.

## V.    Conclusion

For the above reasons, Defendant's Motion to Dismiss will be granted in part and

denied in part.

An appropriate Order follows.