**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEFANO KINIROPOULOS,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **NORTHAMPTON COUNTY** | : | **NO. 11-6593** |
| **CHILD WELFARE SERVICE,** | : | |
| **Defendant.** | : | |

**M E M O R A N D U M**

Stengel, J.                                                                    April 28, 2014

Northampton County suspended, then terminated, the employment of a

caseworker. The caseworker is alleging violations of the Family and Medical Leave Act

(FMLA) and his procedural due process rights. The defendant has moved for summary

judgment. For the reasons stated below, I will grant the defendant's motion for summary

judgment in its entirety.

**I.      BACKGROUND**

Stefano Kiniropoulos was employed by Northampton County Child Welfare

Service as a caseworker from October of 2005 until his termination in October of 2010.[1]

---

[1] Second Am. Compl., Doc. No. 19 at ¶¶ 3, 22. I previously dismissed the first amended complaint in part and
allowed the plaintiff to file a second amended complaint to cure deficiencies in the first complaint. See Doc. No. 17.
Specifically, the amended complaint alleged that the plaintiff was an eligible employee under the Family and
Medical Leave Act (FMLA); however, the amended complaint did not allege that the plaintiff worked more than
1,250 hours, as required by the statute to be eligible. The second amended complaint cures this deficiency. It alleges
that the plaintiff worked more than 1,250 hours during his last year of employment and that the defendant employs
more than fifty (50) employees within a radius of 75 miles of the work site in Easton, thereby making the plaintiff
eligible under FMLA. See Second Am. Compl., Doc. No. 19 at ¶¶ 24-26.

His employment was governed by a Collective Bargaining Agreement (CBA).[2]

Throughout his employment with the defendant, Mr. Kiniropoulos received performance

evaluation reviews that were satisfactory or commendable; his last performance appraisal

was in September 2009.[3]  The plaintiff's immediate supervisor was Rachel Schienholz;

she was supervised by Director of Intake Referral Emergency Services Gary Ruschman.[4]

### a. Plaintiff's Injury

On Friday, May 21, 2010, the plaintiff called Schienholz to say he would not be in

work because he had injured his leg the day before while mowing his lawn.[5] He told her

he could not move and needed to see a doctor.[6] He took sick leave on that day and

indicated he may not be in Monday as well.[7]

The plaintiff then reported to work on both Monday and Tuesday of the following

week but informed Schienholz that he was having difficulty walking and could not

---

[2] Id. at ¶ 61.

[3] Id. at ¶ 5. Kiniropoulos Dep., Doc. No. 28, App. Part 1 at 276.

[4] Second Am. Compl., Doc. No. 19 at ¶¶ 7, 13.

[5] See State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 2 at 11. The second amended complaint indicates that the plaintiff notified Schienholz of the injury on or about May 20, 2010. Second Am. Compl., Doc. No. 19 at ¶¶ 8, 9. I will note that the original complaint and the amended complaint allege that this date was March 24, 2010.  See Compl., Doc. No. 1 at ¶ 8; Am. Compl., Doc. No. 9 at ¶ 8. In his deposition, the plaintiff also claimed that his injury happened over the weekend of the 24th, 25th, 26th. Kiniropoulos Dep., Doc. No. 28, App. Part 1 at 306; see also State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 62. The State Civil Service Commission noted the 24th and 25th were a Monday and Tuesday, respectively. See State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 62 n. 9. Since the defendant provides this date as a material fact from the Second Amended Complaint, which the plaintiff does not dispute, I will accept May 20, 2010 as the date of injury and May 21, 2010 as being the date the plaintiff notified Schienholz. See Defendant's Motion for Summary Judgment, Doc. No. 25 at ¶¶ 4, 6 and Plaintiff's Opposition to Motion for Summary Judgment, Doc. No. 28 at ¶¶ 4, 6.

[6] State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 2 at 11.

[7] Id.

2

perform his three scheduled court hearings on May 26, 2010.[8] Schienholz asked him to attend the hearings because he was most familiar with the cases.[9] She offered to provide transportation to the scheduled hearings, an offer the plaintiff declined.[10] On Wednesday, May 26, 2010, the plaintiff attended those court hearings and was transported to those hearings by a family member because he could not drive.[11]

On Thursday, May 27, 2010, the plaintiff began a scheduled vacation he had requested several weeks earlier, to coincide with the Memorial Day holiday.[12] On June 2, 2010, while on vacation, the plaintiff emailed Schienholz and copied Ruschman regarding his medical condition and his inability to work.[13] Schienholz never responded to the e-mail.[14] From May 20, 2010 to June 11, 2010, the plaintiff used crutches or a cane to ambulate.[15]

### b. Allegations of Misconduct against the Plaintiff

---

[8] Id.; Second Am. Compl., Doc. No. 19 at ¶¶ 10, 11.

[9] See Second Am. Compl., Doc. No. 19 at Ex. A. The plaintiff indicates in this email that Schienholz had asked him to explain his hours the day after the hearings. Id.

[10] Id. at ¶ 12.

[11] State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 2 at 11.

[12] Id. at 13. At the end of April or beginning of May 2010, the plaintiff requested and was approved to take vacation from May 27 through June 10, 2010. Id. at 10.

[13] Second Am. Compl., Doc. No. 19 at ¶ 13, Ex. A.

[14] Id. at ¶ 14.

[15] The plaintiff said that the urgent care doctor gave him the crutches he used; however, he also testified that he got the crutches without a prescription. Kiniropoulos Dep., Doc. No. 28, App. Part 1 at 307. See Doc. No. 25 at ¶ 8; Doc. No. 28 at ¶ 8.

While the plaintiff was away on vacation Schienholz temporarily took over his caseload.[16] On Friday, May 28, 2010, she began receiving calls regarding problems with the plaintiff's clients.[17] As a result, she had to perform a required, but previously neglected, home visit for a client in May. She also needed to make a referral to a service agency which the plaintiff had failed to perform.[18] At that time, she learned that other home visits and tasks in the plaintiff's caseload had not been completed.[19] When she double-checked the plaintiff's records for his contact sheets from January, February, and March, she found that the completion dates on the contact sheets did not match the dates on tasks he allegedly performed.[20]

After reviewing the plaintiff's travel forms, time reports, and daily attendance sheets from January until May, Schienholz found numerous discrepancies.[21] During those months, the plaintiff had eight clients on his caseload; Schienholz found errors and inconsistencies in six of those cases.[22] Schienholz reported her findings to Ruschman. He

---

[16] Id.

[17] Id. at 13-14.

[18] Id.

[19] Id.

[20] Id.

[21] State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 2 at 29-36; App. Part 3 at 37-38. For example, on January 4, 2010, the plaintiff submitted a travel reimbursement form that indicated he traveled thirty-three miles to a family visit in Whitehall; the plaintiff's time report indicated that he was off on vacation that day while his attendance sheet showed that he was out sick. State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 47.

[22] State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 2 at 13-29. In addition, when Chris Broubalow took over six of the cases assigned to the plaintiff's caseload during his suspension, he found other deficiencies in how they had been managed, such that several of the children on the plaintiff's caseload did not even know who he was. State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 39. For example, one of the plaintiff's clients J.D. indicated he did not know him; J.D.'s foster parent from October 2009 to May 2010

then reviewed the documents as well, trying to reconcile them.[23] Ruschman then contacted Ross Markus, the Human Resources Director, who advised him to meet with the plaintiff to discuss the discrepancies.[24]

On June 10, 2014, the plaintiff called Ruschman to update him on his injury and notify him of an orthopedist appointment he had scheduled for June 11, 2010 to seek further treatment for his injury.[25] During that call, Ruschman told the plaintiff they needed to discuss some concerns with his caseload before he returned to work; Ruschman told the plaintiff they would meet regarding the issues in his cases on June 14, 2010—the day the plaintiff was scheduled to return from vacation.[26] On the morning of June 11, 2014 (the plaintiff's day off), the plaintiff came to see Ruschman at his office before the plaintiff's medical appointment. He told Ruschman he was concerned about the

---

stated that the plaintiff only performed one home visit during his six-month placement with her, though the plaintiff was required to make home visits monthly and reported doing so. Id. at 53. That home visit took place in March 2010, the day before a court hearing. Id. The foster parent testified at his termination hearing that she had complained about the plaintiff's lack of contact with J.D.; however, there was no change in his handling of the case. Id. at 54.

[23] State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 56.

[24] Id.

[25] Id. at 38, 56; Second Am. Compl., Doc. No. 19 at ¶ 15; Kiniropoulos Dep., Doc. No. 28, App. Part 1 at 310. The State Civil Service Commission noted that the plaintiff gave conflicting testimony about when he first notified Ruschman of his orthopedist appointment, stating first that he had advised him about this on June 10th and then later stating he did so on June 11th. See State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 63 n. 10. The parties, however, agree that the plaintiff had informed Ruschman of the appointment on June 10th when they spoke on the phone. See Doc. No. 25 at ¶¶ 12 and Doc. No. 28 at ¶ 12.

[26] State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3; Second Am. Compl., Doc. No. 19 at ¶ 15.

allegations lodged against him.[27] Ruschman indicated to the plaintiff that the charges

against him included a "derelict of duty" and "theft of mileage."[28]

The plaintiff then attended his scheduled appointment with the orthopedist, who

ordered him not to return to work until June 29, 2010.[29] The plaintiff says that he then

called Ruschman that afternoon and told him at that time that he wished to explore

FMLA leave as a result of the doctor's order.[30]

### c. Process Afforded Plaintiff Regarding Suspension and Termination

The plaintiff did not attend the June 14, 2010 meeting regarding the

inconsistencies in his caseload.[31] Instead, Chris Broubalow, the plaintiff's union

representative, came to the meeting and presented a letter from the plaintiff.[32]  The

plaintiff did not want to attend the meeting because he was told he could not bring legal

---

[27] Kiniropoulos Dep., Doc. No. 28, App. Part 1 at 312; State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 38. The plaintiff claims that he was not informed of any serious complaints against him before the June 11th meeting. Kiniropoulos Dep., Doc. No. 28, App. Part 1 at 314.

[28] The plaintiff testified that he did not know specifically that the issues to be discussed at the June 14th meeting involved fraud or stealing time. Kiniropoulos Dep., Doc. No. 28, App. Part 1 at 316-17. Ruschman stated that it was only during a conversation with Ross Marcus that any possibility of criminal prosecution related to the mileage reimbursement was mentioned; he claims any mention of that possibility went no further. Ruschman Dep., Doc. No. 28, App. Part 1 at 21. The parties, however, agree that Ruschman did indicate to the plaintiff at some point prior to the June 14th meeting that the plaintiff was accused of theft of mileage. See Doc. No. 25 at ¶ 18 and Doc. No. 28 at ¶ 18.

[29] Defendant's Motion for Summary Judgment, Doc. No. 25, Ex. B. The plaintiff testified that the injury ended up being stenosis of the nerve in his back being pinched, thereby causing shooting pain in his leg. Kiniropoulos Dep., Doc. No. 28, App. Part 1 at 311. The doctor's note he provided to his employer, however, indicated that he was being treated for Medial Collateral Ligament Sprain of the Right Knee. See Doc. No. 25, Ex. A (Kiniropoulos Dep., Ex. D-4).

[30] Id. at 315.

[31] Ruschman testified during his deposition that the plaintiff never notified him that he was not going to attend the June 14, 2010 pre-suspension meeting. Ruschman Dep., Doc. No. 28, App. Part 1 at 17.

[32] See Ruschman Dep., Doc. No. 28, App. Part 1, at 17 and Ruschman Dep. Ex. 2, App. Part 1. Broubalow testified that the plaintiff never rebutted the charges against him nor discussed those charges with him. Broubalow Dep., Doc. No. 28, App. Part 3 at 147.

counsel.[33]  The meeting was attended by Ruschman, Marcus, and Joanne Ummarino, a

human resources  representative.[34]

In that letter, the plaintiff explained that he was sending Broubalow as his union

representative so that he could "gather a better understanding of the allegations made

against [him]" so that he could "seek legal representation in order to fully comprehend

and deal with the matter at hand."[35] The plaintiff also stated that his orthopedist

recommended that he not return to work until June 29, 2010 and that during his time out

of work he "will also be considering FMLA leave due to long-term rehabilitation and

physical therapy treatment."[36] He also stated that he requested that the union investigate

Schienholz's handling of his request for sick leave on May 26, 2010 because "[w]ith a

documented injury, and adequate sick leave, [he did] not find it appropriate for an

administrator to offer to transport an injured employee into work."[37] He further denied

any charges against him as being "false, fabricated, and damaging accusations."[38]

---

[33] Kiniropoulos Dep., Doc. No. 28, App. Part 1 at 318. The plaintiff stated that he was told by union representatives that the defendant would not permit him to have his attorney at that meeting. Id. at 316. He believed he needed an attorney present because he felt like he was being "sabotaged." Id. Broubalow confirmed that the defendant told him he could not bring legal counsel with him to the meeting. Broubalow Dep., Doc. No. 28, App. Part 3 at 150-51.

[34] See Ruschman Dep., Doc. No. 28, App. Part 1 at 17.

[35] Plaintiff's June 14, 2010 Letter, Doc. No. 19, Ex. B.

[36] Id. Ruschman testified that the plaintiff never requested FMLA leave; he did not consider the plaintiff's June 14, 2010 letter to be a request for FMLA. State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 58. He never completed the forms for FMLA. Id. The plaintiff indicated in his deposition that he understood that the county policy requires that an employee use available sick time first and then "explore other options, such as FMLA." Kiniropoulos Dep., Doc. No. 28, App. Part 1 at 305-06. The plaintiff claims he had nine-and-a-half weeks of accrued leave, including sick, vacation, and other leave, at the time he was injured. State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 62.

[37] Plaintiff June 14, 2010 Letter, Doc. No. 19, Ex. B.

[38] Id.

The plaintiff was suspended on June 14, 2010 without pay, pending an investigation of the charges against him.[39] In the letter informing him of this suspension, the defendant indicated that the suspension could be reversed and the plaintiff reinstated with back pay if the investigation showed no grounds for removal.[40] The letter also notified him that he could appeal this suspension by either appealing it directly to the State Civil Service Commission or filing a grievance through the union.[41] The plaintiff chose to appeal to the Civil Service Commission.

On September 21, 2010, the defendant sent the plaintiff a letter with its specific findings of misconduct, including falsification of mileage records and time reports and fabrication of work that was never completed.[42] On September 27, 2010, the plaintiff responded to the charges against him in writing.[43]

---

[39] Second Am. Compl., Doc. No. 19 at ¶ 20. Ruschman then again reviewed the plaintiff's documents in order to substantiate the information in them. State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 57. In addition to the initial inconsistencies found by Schienholz and Broubalow, the investigation also found that the plaintiff spent time during work hours conducting business for his limousine business. For example, on May 28, 2010, he received a fax at work from the New Jersey State Police regarding a limousine pick-up on June 4, 2010. State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 2 at 12. A picture of a partially nude woman was also found on his work cell phone. Id.

[40] Doc. No. 25, Ex. A (Kiniropoulos Dep., Ex. D-5).

[41] Id.

[42] See id. at Ex. D-8. See also Ruschman Dep., Doc. No. 28, App. Part 1, at 20; State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 57.

[43] Doc. No. 25, Ex. A (Kiniropoulos Dep., Ex. D-9). State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 57. The only charge the plaintiff substantively addressed was his inappropriate use of his work cell phone; that charge was withdrawn as a basis for removal. Id. He simply denied the other accusations as false because they had not been raised brought up before he was injured, though the charges go back to January. Doc. No. 25, Ex. A (Kiniropoulos Dep., Ex. D-9).

The plaintiff remained on suspension until he was terminated on October 18, 2010.[44] The plaintiff appealed his termination to the Civil Service Commission. The Civil Service Commission held a hearing on both the suspension and the termination, which took two days.[45] The plaintiff was allowed to present evidence and witnesses.[46]  The Commission upheld both the suspension and termination as being for cause; the Commission also concluded that the plaintiff's suspension and termination were not related to his injury or request for FMLA leave.[47] The plaintiff then appealed the Civil Service Commission's decision to the Pennsylvania Commonwealth Court.[48] The Pennsylvania Commonwealth Court affirmed the Commission's decision.[49] The Unemployment Commission Board of Review also determined that the plaintiff should

---

[44] Id. at ¶ 21. Northampton County's Employee Policies Manual states under the "Travel, Meal & Mileage Reimbursement" section that "Careless, fraudulent, or negligent submission of reimbursement forms may require financial restitution to the County by the employee and may result in disciplinary action up to and including possible termination of employment." State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 2 at 9.

[45] Doc. No. 25 at ¶ 37 and Doc. No. 28 at ¶ 37. See State Civil Service Commission Appeal Decision, Doc. No. 28, App. Parts 2 and 3.

[46] Doc. No. 25 at ¶ 37 and Doc. No. 28 at ¶ 37. See State Civil Service Commission Appeal Decision, Doc. No. 28, App. Parts 2 and 3.

[47] At this hearing, the plaintiff testified that he did, in fact, meet with his clients monthly as he was required to do; however, he was not always required to sign-in at the various facilities he visited, thereby explaining the lack of documentation of his visits. State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 58. The other discrepancies he claimed were simply inadvertent errors in his reporting incorrect dates or places. Id. at 60-61. He also claimed that one client lied about not seeing him. Id. The State Civil Service Commission was convinced that the "volume and breadth of the inconsistencies in [the plaintiff's] documentation" indicate that they were more than "simple 'errors.'" Id. at 64.

[48] Doc. No. 25 at ¶ 39 and Doc. No. 28 at ¶ 39.

[49] Doc. No. 25 at ¶ 39 and Doc. No. 28 at ¶ 39; Kiniropoulos v. State Civil Service Com'n (Northampton County Department of Human Services), No. 2104 C.D.2011, 2012 WL 8700472 (Pa. Commw. Ct. Jun. 29, 2012), allocatur denied 618 Pa. 678 (Pa. Nov. 8, 2012).

not receive unemployment compensation because his discharge was for cause; the

Pennsylvania Commonwealth Court also affirmed this decision.[50]

### d. Procedural History of This Action

The plaintiff filed this action against the defendant on October 21, 2011.[51] In his

original complaint and amended complaint, the plaintiff had alleged violations of the

Americans with Disabilities Act, the Pennsylvania Human Relations Act, Federal Civil

Rights Act, the Family and Medical Leave Act (FMLA), and § 1983.[52] The defendant

filed a motion to dismiss, which I granted related to all counts except those related to the

FMLA and due process violations.[53] I allowed the plaintiff to file a second amended

complaint to cure deficiencies in the remaining claims. The second amended complaint

alleges a violation of FMLA, 29 U.S.C. § 2615, Retaliation and a procedural due process

violation under 42 U.S.C. § 1983. The defendant now moves for summary judgment.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(a). A factual dispute is "material" only if it might affect the

---

[50] See Doc. No. 25 at ¶ 40 and Doc. No. 28 at ¶ 40; Kiniropoulos v. Unemployment Compensation Bd. of Review, No. 1060 C.D.2011, 2012 WL 8670118 (Pa. Commw. Ct. Mar. 23, 2012), *allocatur denied* 618 Pa. 678 (Pa. Nov. 8, 2012).

[51] I will note that this action was filed before the plaintiff's appeals of his termination decision and unemployment denial were complete in the state courts. See Kiniropoulos v. State Civil Service Com'n (Northampton County Department of Human Services), No. 2104 C.D.2011, 2012 WL 8700472 (Pa. Commw. Ct. Jun. 29, 2012); Kiniropoulos v. Unemployment Compensation Bd. of Review, No. 1060 C.D.2011, 2012 WL 8670118 (Pa. Commw. Ct. Mar. 23, 2012).

[52] See Compl., Doc. No. 1 and Am. Compl., Doc. No. 9.

[53] See Doc. No. 17 and 18.

outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

A party moving for summary judgment always bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: 1) citing relevant portions of the record, including depositions, documents, affidavits, or declarations; 2) showing that the materials cited do not establish the absence or presence of a genuine dispute; 3) or showing that an adverse party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

Under Rule 56, the court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255.  The court must decide "not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. The non-moving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather must present clear evidence from which a jury

can reasonably find in its favor. <u>Ridgewood Bd. of Educ. v. N.E. for M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999).  Finally, in reviewing a motion for summary judgment, the court does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion. <u>Siegel Transfer v. Carrier Express</u>, 54 F.3d 1125, 1127 (3d. Cir.1995).

## III.   DISCUSSION

The plaintiff only disputes two material facts: 1) that the plaintiff never advised the defendant that he might seek FMLA benefits until after there were serious concerns about the plaintiff's job performance, and 2) that the plaintiff failed to attend the June 14th meeting without a reason.[54] I do not find either of these contentions amount to genuine issues of material fact because they do not affect the outcome of the case. As I will explain below, the questions that remain are legal, not factual.

### A.       Preclusion of Count I: FMLA – Unlawful Retaliation

The defendant argues that the plaintiff is precluded from bringing his FMLA claim because it has already been adjudicated by State Civil Service Commission and reviewed by the Pennsylvania Commonwealth Court.[55] Decisions of state administrative agencies that have subsequently been reviewed by state courts can be given full faith and credit in federal courts under 28 U.S.C. § 1738 and, thereby, have preclusive effect. <u>Edmundson v.</u>

---

[54] <u>See</u> Doc. No. 25 at ¶¶ 23, 25 and Doc. No. 25 at  ¶¶ 23, 25.

[55] The plaintiff's claims were also appealed to the Unemployment Board and reviewed by the Commonwealth Court; the defendant does not argue that the unemployment proceedings preclude the current claims. For this reason, I am not analyzing their possible preclusive effect. However, I will note that there is some precedent to indicate that they too may be preclusive. <u>See</u> <u>Roth v. Koppers Industries, Inc.</u>, 993 F.2d 1058 (3d Cir. 1993).

Bor. of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993)(citing Kremer v. Chemical

Constr. Corp., 456 U.S. 461, 479–85 (1982)).

Preclusion may be available to bar subsequent court proceedings under two

principles: issue preclusion and claim preclusion. With issue preclusion, or collateral

estoppel, "the earlier judgment forecloses only a matter actually litigated and essential to

the decision." Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988).  Claim preclusion, or

*res judicata*, is broader in effect than issue preclusion and "prohibits reexamination not

only of matters actually decided in the prior case, but also those that the parties might

have, but did not, assert in that action." Edmundson, 4 F.3d at 189.

The defendant does not specify which of the two doctrines bars re-litigation. The

plaintiff did raise his FMLA claim during his Commission hearing; the Commission then

found that his request for FMLA leave was not causally related to his removal.[56] On

appeal to the Commonwealth Court, the plaintiff abandoned his claim of discrimination

and, therefore, that court did not reach the merits of his FMLA claim.[57]

Given that the Commonwealth Court did not review the plaintiff's claims of

discrimination, issue preclusion would not apply because the plaintiff did not present his

---

[56] The State Civil Service Commission clearly stated that the plaintiff  "failed to persuade us that the decision to remove him was a result of his non-work related injury, leave [he] took (or requested) regarding that injury, or some alleged desire by the appointing authority to avoid providing leave to [the plaintiff]." State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 66-67. The Commission then went on to say that it did not "find any connection between [the plaintiff's] injury or leave (regardless of whether it would have constituted FMLA leave had it been formally requested) and his removal." Id. at 67.

[57] Kiniropoulos v. State Civil Service Com'n. (Northampton County Department of Human Services), No. 2104 C.D.2011, 2012 WL 8700472, at *3 n. 7 (Pa. Commw. Ct. Jun. 29, 2012) ("Petitioner also asserted a claim of discrimination before the Commission; however, he has abandoned that claim on appeal.").

FMLA claim to this court.[58] Claim preclusion, however, could apply if the plaintiff could

have presented his FMLA claim to the Commonwealth Court but chose not to do so.[59]

State law determines whether the previous state court action has preclusive

effect.[60] The Pennsylvania Civil Service Act prohibits discrimination based on "race,

national origin, or other non-merit factors." 71 P.S. § 741.905a.  Under the Civil Service

Act, "[a] discriminatory policy that violates federal law cannot serve as the basis of an

employee's dismissal." Williams v. Pennsylvania Dept. of Public Welfare, Bensalem

Youth Development Ctr., 671 A.2d 292, 294 (Pa. Commw. Ct. 1996). Therefore, claims

of employment discrimination may be raised as part of a State Civil Service

Commission's adjudication, as they were in this case.[61] The Commonwealth Court may

then hear and review claims of employment discrimination in state employee discharge

cases, as the court tasked with reviewing the Commission's decisions.[62] While the

---

[58] Technically issue preclusion could bar the plaintiff from re-litigating his claims if the Commission's findings themselves could give preclusive effect; however, Edmundson and Kremer explain that the state court's review of the agency decision is what allows for full faith and credit in this court. For this reason, I am focusing on what was presented to the Commonwealth Court, as opposed to simply the Commission, in determining which doctrine applies. See Edmundson, 4 F.3d at 189 (citing Kremer v. Chemical Constr. Corp., 456 U.S. 461, 479–85 (1982)).

[59] See Bazargani v. Haverford State Hosp., 90 F.Supp.2d 643, 656 (E.D. Pa. 2000)("[M]erely because a party did not raise a particular issue in the first judicial proceeding will not enable the party to avoid claim preclusion, if those particular claims could have been raised at that first proceeding."); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 461 (3d Cir. 1996)("All matters which might have been raised in the former suit as well as those that actually were raised are res judicata in a subsequent proceeding.").

[60] See, e.g., Bazargani, 90 F.Supp.2d at 657.

[61] See id; State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 66-67.

[62] See, e.g., Masneri v. State Civil Serv. Comm'n, 712 A.2d 821 (Pa. Commw. Ct.1998) (affirming Commission's decision that employee was not furloughed based on gender discrimination); Williams v. Pennsylvania Dep't of Public Welfare, Bensalem Youth Dev. Ctr., 671 A.2d 292, 294 (Pa. Commw. Ct. 1996)(explaining how claims of discrimination are properly raised during State Civil Service Commission hearings on wrongful terminations of state employees).

plaintiff did not raise his FMLA claim on appeal to the Commonwealth Court, he was not barred from doing so.[63]

Because the plaintiff could have raised his FMLA claim in the Commonwealth Court, *res judicata* under Pennsylvania law could preclude his FMLA claim if the following elements are the same in both his state case and this case: 1) the thing being sued on; 2) the cause of action; 3) the persons and parties to the action; and 4) quality or capacity of the parties suing or sued. Duquesne Slag Products Co. v. Lench, 415 A.2d 53, 55 (Pa.1980).

I find these elements to be the same in both cases. In both, the plaintiff is suing for wrongful suspension and then termination under FMLA. The facts and parties in both cases are identical.[64] The plaintiff was given the same ability to make out his FMLA claim in the Commission hearing and then on appeal to the Commonwealth Court as he

---

[63] Both state and federal courts have jurisdiction to hear FMLA claims. See 29 U.S.C.A. § 2617(a)(2).

[64] "To determine whether causes of action are identical for *res judicata* purposes, the court may consider several factors including whether:

> (1) the acts complained of and the demand for relief are the same;
>
> (2) the theory of recovery is the same;
>
> (3) the witnesses and documents necessary at trial are the same; and
>
> (4) the material facts alleged are the same."

Bazargani v. Haverford State Hosp., 90 F.Supp.2d 643, 658-59 (E.D.Pa. 2000) (citing O'Leary v. Liberty Mutual Insurance Co., 923 F.2d 1062, 1065 (3d Cir.1991)).

Under this rubric, the cause of action would be identical because: 1) the plaintiff complains that his suspension and termination were really the result of discrimination related to his request for sick leave, just as he claimed in his Commission proceedings; 2) the theory of recovery under both actions is essentially wrongful discharge as a result of discrimination; 3) the witnesses and documents needed for trial in this case would be the same as those used at the Commission's hearing; and 4) the materials facts alleged in this case are the same as those shown in the Commission's findings of fact which were then reviewed by the Commonwealth Court.

would be able to do in this court.[65]  Therefore, *res judicata* precludes the re-litigation of the plaintiff's FMLA claim in this case.

The plaintiff argues that preclusion would not apply because he "specifically excluded his federal claims from the State Civil Service claim."[66] He claims that "the State Civil Service Commission expressly excluded federal legal matters as per agreement of the parties."[67] The State Civil Service Commission's decision clearly shows otherwise; its findings of facts include all the relevant material facts regarding the plaintiff's injury and request for leave. The Commission's findings specifically speak to whether the plaintiff's injury and request for leave were causally related to his suspension and termination.[68] For these reasons, this argument has no merit.[69]

---

[65] The plaintiff had a two-day hearing before the State Civil Service Commission during which he could present witnesses, cross-examine the employer's witnesses, and offer other evidence to support his case of wrongful discharge and suspension. The Commission hearing resulted in a 68-page opinion including 40 pages of factual findings; the Commonwealth Court's opinion was five pages.  See Doc. No. 25 at ¶ 37 and Doc. No. 28 at ¶ 37; State Civil Service Commission Appeal Decision, Doc. No. 28, App. Parts 2 and 3;  Kiniropoulos v. State Civil Service Com'n (Northampton County Department of Human Services), No. 2104 C.D.2011, 2012 WL 8700472 (Pa. Commw. Ct. Jun. 29, 2012).

[66] Plaintiff's Response in Opposition to Motion for Summary Judgment, Doc. No. 28 (the plaintiff did not provide page numbers so a pin cite is unavailable).

[67] Id.

[68] The State Civil Service Commission clearly stated that the plaintiff "failed to persuade us that the decision to remove him was a result of his non-work related injury, leave [he] took (or requested) regarding that injury, or some alleged desire by the appointing authority to avoid providing leave to [the plaintiff]."State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 66-67. The Commission then went on to say that it did not "find any connection between [the plaintiff's] injury or leave (regardless of whether it would have constituted FMLA leave had it been formally requested) and his removal." Id. at 67.

[69] It is unclear why the plaintiff argues this point; he offers no supporting legal authority to explain why this exclusion is relevant. I can only assume that the plaintiff is trying to make an argument under England v. Louisiana State Brd. of Med. Examiners, 375 U.S. 411(1964), and Bradley v. Pittsburgh Brd. of Ed., 913 F.2d 1064, 1071 (3d Cir.1990), which have found that *res judicata* may not apply to federal claims which a plaintiff has reserved for federal court. These cases, however, explain that a plaintiff must advise the state tribunal of his intention to make such a reservation and the state court must agree to that reservation. See England, 375 U.S. at 421-22; Bradley, 913 F.2d at 1071. There is no evidence that the plaintiff made such a reservation. Neither the record of the State Civil Service Commission nor record of the Commonwealth Court notes a reservation. The plaintiff has provided no evidence of this reservation nor argued why it would preclude *res judicata* under legal precedent.

Because the plaintiff's FMLA claim is precluded by *res judicata*, I will grant the

defendant's motion for summary judgment as to Count I.[70]

## B.      Count II: Procedural Due Process Violation under § 1983[71]

The plaintiff's procedural due process claim is premised on his contention that he

was not provided due process before being suspended without pay.[72] The defendant

---

[70] I will note that even if *res judicata* did not bar the plaintiff's FMLA claim, the claim would still likely not move forward past summary judgment. Even if the plaintiff could establish a prima facie case of retaliation under FMLA, there appears to be no evidence in the record that the defendant's reasons for his suspension and termination were really just pre-text for discriminatory reasons. See, e.g., Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-02 (3d Cir. 2012)(explaining how the McDonnell Douglas burden-shifting test is used in analyzing FMLA retaliation claims).

[71] The defendant mentions at one point that the plaintiff's entire action should be precluded; however, the defendant offers no reasoning on why his procedural due process claim should also be precluded. Unlike his FMLA claim, the state court proceedings do not discuss § 1983 or violations of the plaintiff's procedural due process. Therefore, I find no indication that this count in its entirety should also be precluded.

I will note though that in his response in opposition to the motion for summary judgment, the plaintiff makes an argument that his due process rights were violated under Section 803 of the Pennsylvania Civil Service Act, 71 P.S. ¶ 741.803—though he did not plead this violation in his second amended complaint. This argument was one raised to the Pennsylvania Commonwealth Court; that court found that this issue was waived because it was not preserved for appeal. The plaintiff himself even points out how Judge Jubelirer disagreed with the majority's finding that this issue had been waived and not preserved for appeal. The plaintiff now tries to use this dissent to create some sort of genuine issue of material fact in this case. This issue has already been decided by the state court and is clearly precluded by the Commonwealth Court's decision. See Kiniropoulos v. State Civil Service Com'n (Northampton County Department of Human Services), No. 2104 C.D.2011, 2012 WL 8700472 (Pa. Commw. Ct. Jun. 29, 2012), *allocatur denied* 618 Pa. 678 (Pa. 2012).

[72] The plaintiff also argues that the grievance process in place was somehow biased against him because his union representative—the same representative *he chose* to send in his place to the June 14, 2010 meeting—was later given in a job in his unit and, therefore, had an implied conflict of interest in representing him. Second Am. Compl., Doc. No. 19 at ¶ 51.

I previously dismissed without prejudice the plaintiff's procedural due process claim under § 1983 because it did not appear that the plaintiff had exhausted all available remedies under his collective bargaining agreement. I allowed the plaintiff to amend these pleadings to show "what steps, if any, he and/or his union took in challenging his suspension and dismissal through administrative or grievance procedures." I also requested that a copy of the collective bargaining agreement or excerpts from the agreement outlining the appropriate procedure be submitted. Doc. No. 17. The plaintiff failed to include this information in his second amended complaint; he claims he was never given a copy of the collective bargaining agreement so doesn't know what the grievance procedure should entail. Second Am. Compl., Doc. No. 19 at ¶ 45. He simply contends that Broubalow should have advocated on his behalf or attempted to file a grievance for him. Id. at ¶ 52.

This argument by the plaintiff has no merit. The plaintiff was given the option to appeal his suspension to the State Civil Service Commission OR through the union grievance procedure. He chose the former. Because the plaintiff chose not to use the union's grievance procedure, he cannot claim his due process rights were violated by it. See

argues that the plaintiff's procedural due process claim should fail because the plaintiff did not attend the June 14, 2014 pre-suspension meeting. See Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate."). The plaintiff counters that he did not attend the meeting because he was not allowed to bring counsel with him to the meeting. While the reason why the plaintiff did not attend the meeting is in dispute, I do not find this dispute to be genuine. The plaintiff's reason for not attending does not determine whether the count should go forward. The real issue under this count is a legal one and not a factual one.

Procedural due process claims under § 1983 typically require a two-stage analysis of: 1) whether the interest of which the plaintiff was deprived one that is protected by the Fourteenth Amendment as life, liberty, or property; and then 2) whether the process afforded the plaintiff in the deprivation of that interest is adequate. Suzuki, 227 F.3d at 116. Because it is clear that the plaintiff as a public employee had a protected interest in his employment under the Fourteenth Amendment, the plaintiff's claim turns on the

---

Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate.").

Even if there was some other obligation via the collective bargaining agreement that Broubalow was supposed to carry out on the plaintiff's behalf, Broubalow testified that the plaintiff never discussed the charges with him and simply gave him the letter to give to the defendant on June 14, 2010. Broubalow Dep., Doc. No. 28, App. Part 3 at 150-51. Broubalow could not be expected to advocate for the plaintiff and rebut the charges against him if he was not given information by the plaintiff, which would aid him in doing so.

second step: whether the June 14, 2010 pre-suspension meeting provided adequate due process.[73]

Though not an absolute rule, "a public employee is generally entitled to notice and an opportunity to be heard prior to being deprived of his or her property interest in employment." Suzuki, 227 F.3d at 121.[74] This hearing should provide a public employee with "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).

In this case, the plaintiff was notified of the charges of misconduct against him when he spoke to Ruschman on the phone on June 10, 2010.[75] He then spoke with Ruschman again on the morning of June 11, 2010 at which time he was notified that the issues would be discussed further at a formal meeting to be held on June 14, 2010—the day the plaintiff was scheduled to return from vacation. The meeting was, in fact, held on June 14, 2010. The plaintiff did not attend; instead, he sent Broubalow as his union representative to submit his letter stating his objections to the charges against him.[76]

---

[73] Neither party disputes that the plaintiff had a protected interest in his employment based on the collective bargaining agreement and/or the State Civil Service Act, because he can only be fired for cause. See Board of Regents v. Roth, 408 U.S. 564, 576–578 (1972)(explaining how a civil service statute or contract can provide the basis for a property interest in continued employment).

[74] See also Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985)(" The essential requirements of due process…are notice and an opportunity to respond.").

[75] As evidenced by the record, the plaintiff knew on June 10, 2010 that his employer had concerns about his caseload. That phone conversation is what spurred him to come to see Ruschman on the morning of June 11, 2010, before his orthopedist appointment on a day he was supposed to be off from work. See Kiniropoulos Dep., Doc. No. 28, App. Part 1 at 312; State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 38.

[76] Though the record shows that the plaintiff did not know the specific charges against him when the letter was written—since the letter was written prior to the June 14th meeting—the plaintiff still denied the charges as false and

The facts developed in discovery show the plaintiff was afforded both notice of the charges against him and an opportunity to be heard on June 14, 2010. He was given the opportunity to be heard orally at the meeting; he instead voiced his objections in writing to his employer through the letter submitted by his union representative.

The plaintiff claims that this meeting violated his due process rights because it was "inadequate." He believes he should have been permitted to bring legal counsel because of the possibility of criminal charges such as fraud or theft of mileage. "Supreme Court precedent firmly establishes there is no Due Process right to counsel unless the individual may be incarcerated as a result of the litigation." Gotthelf v. Toyota Motor Sales, U.S.A., Inc., 525 Fed.Appx. 94, 100 n. 11 (3d Cir. 2013). The plaintiff provides no legal authority to show that he was entitled to have legal counsel at a pre-suspension employment meeting. I find none as well.[77]

To determine what sort of pre-suspension hearing is required, a court must examine and balance: 1) the private interest of the employee to be suspended; 2) the risk of an erroneous suspension by the procedures used, as compared to the probable value additional procedural safeguards may provide; and 3) the government's interest in

---

fabricated. He also at that time indicated that his injury was the real impetus for the charges being brought. See Plaintiff's June 14, 2010 Letter, Doc. No. 19, Ex. B.

[77] In addition, precedent indicates that the opposite is true, that the Supreme Court rejected requiring such formalities at pre-termination hearings. In Loudermill, the majority held that an informal pre-termination hearing for tenured public employees was sufficient so long as it included notice and opportunity to be heard. Loudermill, 470 U.S. at 545-47. The two concurring judges wanted the hearing to look more like a traditional adversarial hearing with evidence presentation, witnesses, and cross-examination. Id. at 548-59. This split implies that the majority did not believe such formalities were warranted for due process to be afforded. See Grier v. Philadelphia Housing Authority, No. CIV. A. 93–5625, 1995 WL 80096, at *8-9 (E.D.Pa. Feb. 27, 1995)(rejecting a public employee's assertion that he was entitled to legal counsel at a pre-termination hearing, discussing how the Loudermill majority rejected having the requirements of a full adversarial hearing).

suspending the individual. <u>Suzuki</u>, 227 F.3d at 120-21 (citing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976)).[78]

It is difficult to quantify the plaintiff's "interest" in having counsel at the hearing. In hindsight, of course, his interest is very high. To be realistic, his liberty interest was not involved and the possibility of criminal sanctions was low. The plaintiff could have been temporarily suspended without pay as a result of the hearing, creating some heightened interest in adequate process.[79] The purpose of the meeting was to determine whether the plaintiff would be temporarily suspended, not whether the plaintiff would be jailed.[80] The defendant itself did not have the authority to arrest and jail him as a result of the meeting. Any information his supervisors had regarding his alleged misconduct could have been given to the police or District Attorney. His right to counsel would come into play in the event criminal charges were filed. But criminal charges were not involved or seriously contemplated.

---

[78] In <u>Gilbert v. Homar</u>, the Supreme Court rejected adopting a categorical rule that a government employer must provide a *pre*-suspension hearing before suspending an employee without pay. 520 U.S. 924, 930 (1997). The Court explained, however, that some sort of prompt hearing regarding the suspension should be afforded the employee, even if the circumstances warranted it to occur post-suspension. <u>Id</u>. at 935-36.

The Court explained in <u>Gilbert</u> that the <u>Matthews v. Eldridge</u> general framework would determine when such a hearing prior to suspension was necessary; "the purpose of any pre-suspension hearing would be to assure that there are reasonable grounds to support the suspension without pay." 520 U.S. at 931-33.

[79] <u>See</u> <u>id</u>. at 930.

[80] The plaintiff is really making a Sixth Amendment right-to-counsel argument but brings his claim as a due process violation under the Fourteenth Amendment; for this reason, I am analyzing the claim under <u>Matthews</u>. I recognize that this analysis is based on an awkward mismatch between the protected property interest the plaintiff is asserting in the first step of the due process analysis—his tenured employment—and the procedural right he believes he is due under the second step—a right to counsel at his pre-suspension hearing. In actuality the protected interest in the first step would be his liberty, not his property right to his employment, under his right-to-counsel theory.

Whether the Sixth Amendment right to counsel attaches to a pre-suspension employment hearing would be a very different question with a different test. There is nothing from the facts presented or legal precedent presented by the parties to show that the Sixth Amendment right to counsel would attach in this situation. <u>See, e.g.</u>, <u>Texas v. Cobb</u>, 532 U.S. 162 (2001).

It is equally difficult to quantify the defendant's interest in having counsel available at a pre-suspension hearing. The plaintiff was afforded a pre-suspension meeting, with his union representative. There is no case law to say that a government employee is entitled to an attorney at a pre-suspension hearing. The plaintiff was not even entitled to a hearing before he was suspended without pay, yet he was provided a hearing. See Gilbert, 520 U.S. at 930.

The facts of the plaintiff's misconduct would be the same whether a pre-suspension hearing with counsel were held or not. Those facts and the evidence offered to the plaintiff at that June 14, 2010 meeting could be given to law enforcement if the County chose to prosecute the plaintiff on theft or fraud charges. The County's decision whether or not to charge Mr. Kiniropoulos had nothing to do with whether he had counsel at his pre-suspension hearing. All this is, of course, academic because the County never pursued criminal charges.

Weighing these factors together, I do not find that the plaintiff's due process rights were violated by his not being able to have counsel present at the pre-suspension meeting on June 14, 2010. A hearing regarding the termination of a public employee's employment "need not definitively resolve the propriety of the discharge" but instead "should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Loudermill, 470 U.S. at 545-46. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Gilbert, 520 U.S. at 930 (quotation marks and citation omitted). Requiring that counsel be

present at a pre-suspension hearing would undercut this flexibility in the procedural framework of public employment termination and suspension hearings. See id.; Loudermill, 470 U.S. at 545-46.

"The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." Id. at 546. The plaintiff did have this opportunity to present reasons why he should not be suspended at the June 14, 2010 meeting. While he was expected to do so verbally, he did so in writing. I find that the plaintiff was afforded due process related to his suspension without pay. For this reason, there is no legal reason for this count to go forward. I will grant summary judgment in favor of the defendant on Count II.[81]

## IV.   CONCLUSION

For the forgoing reasons, I will grant the defendant's motion for summary judgment and enter judgment in the defendant's favor on all counts.

---

[81] The plaintiff does not specifically plead a violation of his due process rights related to his termination though it appears one might be implied. He seems to fold the violation of due process related to his suspension into some possible violation related to his termination because the termination followed the suspension period. Even if a due process violation related to his termination were more specifically pled, I still would not find a due process violation related to his termination.

Pre-termination of employment only requires that the employee be given "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 546. After the investigation of the plaintiff's misconduct, he was then sent a letter dated September 21, 2010 outlining the charges against him and was asked to respond; he did so in writing. See Doc. No. 25, Ex. A (Kiniropoulos Dep., Ex. D-8 and D-9). See also Ruschman Dep., Doc. No. 28, App. Part 1, at 20; State Civil Service Commission Appeal Decision, Doc. No. 28, App. Part 3 at 57. He was then terminated on October 18, 2010.

The plaintiff was given a notice of the charges along with the basis for those charges sent him before he was terminated; he then was given an opportunity to respond to those charges, which he did in writing. This is all the process the plaintiff was due before he was terminated, especially since he was able to appeal the decision to the Commission and then to the Commonwealth Court. See Loudermill, 470 U.S. at 547-48 ("We conclude that all the process that is due is provided by a pre-termination opportunity to respond, coupled with post-termination administrative procedures as provided by [state civil service] statute.").

An appropriate Order follows.